IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

MICHAEL O. PAULEY, THOMAS B.
CLARY, JAMES E. PYNE, HARRY
GREGORY II, ANDREW LAFFERTY; and
UNITED MINE WORKERS OF AMERICA,
INTERNATIONAL UNION on behalf of
themselves and others similarly situated,

                              Plaintiffs

v.

BLUESTONE INDUSTRIES, INC.;
JAMES C. JUSTICE COMPANIES, INC.,
BLUESTONE COAL CORPORATION.;
KEYSTONE SERVICE INDUSTRIES,
INC.; JUSTICE ENERGY,INC.;
DYNAMIC ENERGY INC.; and
DOUBLE BONUS COAL CO.

                           Defendants.

CIVIL ACTION NO.:

**COMPLAINT**

1.      This is an action for enforcement of two related labor Arbitration Awards rendered under a collective bargaining agreement and for damages arising thereunder, and for violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Plaintiffs seek declaratory, injunctive and other relief, to compel Defendants to properly fund and administer the Bluestone Industries Employee Benefit Plan ("Benefit Plan" or "Plan") and to provide payment for services covered thereby, as directed by the Arbitration Awards; to remit to the Benefit Plan in a timely manner the Plan Assets deducted from employee paychecks as contributions to monthly premium payments; to reimburse Plan beneficiaries for out-of-pocket

costs incurred due to Defendants' failure to fulfill their contractual obligation to pay Benefit Plan claims; to apply the appropriate distinct level of benefits to retired employees who participate in the Benefit Plan, as required by the collective bargaining agreements to which Defendants are signatory; to restrict losses to the Plan and to protect its integrity for the benefit of its beneficiaries; and to otherwise  operate the Plan prudently and for the exclusive benefit of its beneficiaries.  Finally, in light of Defendants' demonstrated inability over a period of at least three years to  properly manage its financial resources and Plan Assets to administer and adequately fund the Benefit Plan, Plaintiffs ask this Honorable Court to appoint a Neutral Administrator to supervise and manage these necessary functions on Defendants' behalf.

## JURISDICTION

2.      This action arises under Section 301 of the Labor-Management Relations Act of1947 ("LMRA"), 29 U.S.C. § 185, the Employment Income Security Act ("ERISA"), 29 U.S.C. § 1001 et. seq., and the Federal Arbitration Act, 9 U.S.C. §9.  Jurisdiction and venue are conferred upon this court by section 29 U.S.C. § 185; Section 502(e) and (f) of ERISA, 29 U.S.C. § 1132(e) and (f); by Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9, and by 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

3.      Venue is proper in the Southern District of West Virginia pursuant to 28 U.S.C. § 1391(b) and (c), and 29 U.S.C. § 1132(e)(2).

## PARTIES

4.      Plaintiff Michael O. Pauley resides in Mercer County, at 106 N. Wickham Ave.,

Princeton, WV 24740.   At all times relevant herein, Mr. Pauley has been employed in a

classified position under a collective bargaining agreement between the UMWA and Bluestone

Coal Corp., referenced in paragraph 19 and 20, below, and has been a participant in the

Employer Benefit Plan established thereby.  Mr. Pauley is the President of United Mine Workers

of America Local Union 6196, which provides day-to-day representation to bargaining unit

employees employed by, or retired from,  Bluestone Coal Corp., Keystone Service Industries,

and Double Bonus Coal Co.

5.      Plaintiff Thomas B. Clary resides in Mercer County, at Rt. 2, Box 248, Rock, WV

24747.   At all times relevant herein, Mr. Clary has been employed in a classified position under

a collective bargaining agreement between the UMWA and Dynamic Energy., referenced in

paragraph 24, below,  and has been a participant in the Employer Benefit Plan established

thereby.  Mr. Clary serves in the position of Mine Committeeman of United Mine Workers of

America 8783 and provides day-to-day grievance and safety representation to members

employed by Justice Energy.

6.      Plaintiff James E. Pyne resides in Monroe County, at HC 81, Box 30-A, Lindside,

WV  24951.  At all times relevant herein, Mr. Pyne has been employed in a classified position

under a collective bargaining agreement between the UMWA and Justice Energy, Inc.,

referenced in paragraph 21, below,  and has been a participant in the Employer Benefit Plan

established thereby.  Mr. Pyne serves in the position of Mine Committeeman of United Mine

3

Workers of America 6025 and provides day-to-day grievance and safety representation to members employed by Justice Energy.

7.      Plaintiff Harry Gregory II resides in Mercer County, at Route 3, Box 231, Bluefield, WV, 24701.  Until August 8, 2006, Mr. Gregory was employed in a classified position under a collective bargaining agreement between the UMWA and Keystone Service Industries, referenced in paragraph 22, below.  On August 8, 2006, Mr. Gregory retired under the terms of that collective bargaining agreement.  At all times relevant hereto, Mr. Gregory has been a participant in the Employer Benefit Plan established thereby.

8.      Plaintiff Andrew Lafferty resides in McDowell County, at Box 864, Crumpler, WV 24868.  Until July 23, 2005, Mr. Lafferty was employed in a classified position under a collective bargaining agreement between the UMWA and Keystone Service Industries, referenced in paragraph 22, below.  On July 23, 2005, Mr. Lafferty retired under the terms of that collective bargaining agreement.  At all times relevant hereto, Mr. Lafferty has been a participant in the Employer Benefit Plan established thereby.

9.      Plaintiff United Mine Workers of America ("UMWA") is a labor organization within the meaning of Section 2(5) of the Labor Management Relations Act, 29 U.S.C. § 152(5), which represents coal miners employed by Defendants Bluestone Coal Corp. ("Bluestone Coal"), Keystone Service Industries ("KSI"), Justice Energy Inc. ("Justice Energy"), Dynamic Energy Inc. ("Dynamic Energy"), and Double Bonus Coal Co. ("Double Bonus") (hereafter referenced collectively as "signatory Defendants").  The principal office of the UMWA in this judicial district is located at 1300 Kanawha Boulevard E., Charleston, Kanawha County, West Virginia, and the main office of the International Union is located at 8315 Lee Highway, Fairfax, Virginia.

4

10.     Defendant Bluestone Industries  is a corporation organized and existing under the laws of West Virginia whose principal office is located at 818 North Eisenhower Drive, Beckley, West Virginia, 25802, and is engaged in the business of mining, processing, transporting and/or selling coal at its facilities in McDowell County and other locations in West Virginia.  Bluestone Industries is the parent corporation of the signatory Defendants herein, except for Defendant Justice Energy, Inc., and is an "employer" within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2) and Section 2(5)  of ERISA, 29 U.S.C. §§ 1002(5).

11.     Defendant James C. Justice Companies, Inc. is a corporation organized and existing under the laws of West Virginia whose principal office is located at 818 North Eisenhower Drive, Beckley, West Virginia, 25802, and is engaged in the business of mining, processing, transporting and/or selling coal at its facilities in McDowell County, West Virginia. Bluestone Industries is the parent corporation of the signatory Defendant Justice Energy, Inc., and is an "employer" within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2) and Section 2(5)  of ERISA, 29 U.S.C. §§ 1002(5).

12.     Defendant Bluestone Coal Corporation is a corporation organized and existing under the laws of West Virginia whose principal office is located at 818 North Eisenhower Drive, Beckley, West Virginia, 25802, and is engaged in the business of mining, processing, transporting and/or selling coal at its facilities in McDowell County, West Virginia.  Bluestone Coal is signatory to a collective bargaining agreement with the UMWA and has been, at all times described herein, an "employer" within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2), and ERISA, 29 U.S.C. § 1002(5).

13.     Defendant Keystone Industries, Inc. ("KSI")  is a corporation organized and existing under the laws of West Virginia whose principal office is located at 818 North Eisenhower Drive, Beckley, West Virginia, 25802, and is engaged in the business of mining, processing, transporting and/or selling coal at its facilities in McDowell County, West Virginia. KSI is signatory to a collective bargaining agreement with the UMWA and has been, at all times described herein, an "employer" within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2), and ERISA, 29 U.S.C. § 1002(5).

14.     Defendant Justice Energy is a corporation organized and existing under the laws of West Virginia whose principal office is located at 818 North Eisenhower Drive, Beckley, West Virginia, 25802, and is engaged in the business of mining, processing, transporting and/or selling coal at its facilities in McDowell County, West Virginia..  Justice Energy is signatory to a collective bargaining agreement with the UMWA and has been, at all times described herein, an "employer" within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2), and ERISA, 29 U.S.C. § 1002(5).

15.     Defendant Dynamic Energy, Inc.  is a corporation organized and existing under the laws of West Virginia whose principal office is located at 818 North Eisenhower Drive, Beckley, West Virginia, 25802, and is engaged in the business of mining, processing, transporting and/or selling coal at its facilities in Wyoming County, West Virginia.  Dynamic Energy is signatory to a collective bargaining agreement with the UMWA and has been, at all times described herein, an "employer" within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2), and ERISA, 29 U.S.C. § 1002(5).

16.     Defendant Double Bonus is a corporation organized and existing under the laws of West Virginia whose principal office is located at P.O. Box 414, Pineville, West Virginia, 24874, and is engaged in the business of mining, processing, transporting and/or selling coal at its facilities in or near Wyoming County, West Virginia.  Double Bonus is signatory to a collective bargaining agreement with the UMWA and has been, at all times described herein, an "employer" within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2), and ERISA, 29 U.S.C. § 1002(5).

17.     The Defendants all maintain, pursuant to National Bituminous Coal Wage Agreement of 2002, an Employer Benefit Plan that provides active classified employees, retired classified employees, and their eligible dependents with health benefits within the meaning ERISA, 29 U.S.C. §1002(1).

## THE FACTS

**I.  The Defendants' Collective Bargaining Agreements and the Employer Benefit Plan**.

18.     The Defendants are engaged in the business of operating coal mining facilities in McDowell County and/or Wyoming County, West Virginia, and are signatory to UMWA collective bargaining agreements in which they have all agreed to provide health coverage to bargaining unit members who are employed by them or who have retired from employment with them with the requisite years of service to be eligible for retiree health care.

19.     On January 1, 2003, Defendant Bluestone Coal and the UMWA entered into an Agreement, effective through December 31, 2006, in which Bluestone Coal agreed to adopt each and every term of the 2002 NBCWA, including the provision of Health Care and the

7

establishment of an Employer Benefit Plan pursuant to Article XX(10) of the NBCWA.  On
January 1, 2003, Bluestone Coal and the UMWA also entered into a Memorandum of
Understanding ("MOU") which specifically addressed the level of benefits to be provided under
the Benefit Plan for active employees and agreed that it would be administered as an "80/20
Plan" that included particular annual deductibles and out-of-pocket costs, and would assess
active employees a monthly premium contribution co-payment by means of payroll deductions
from gross pay.  Benefit Plan participants electing individual coverage are subject to a monthly
$50.00 payroll deduction, a $500.00 deductible, and a $1500 annual out-of pocket maximum.
Participants electing family coverage are subject to a monthly payroll deduction of $100.00 or
$150.00, depending on the number of dependents, a $1000.00 deductible, and a $3000.00 annual
out-of-pocket maximum.  A true and correct copy of the aforementioned UMWA-Bluestone
Coal Agreement and MOU (including the appended Summary of Benefits) is attached hereto as
Exhibit A.

20.     The Bluestone Coal MOU referenced in ¶19, above, explicitly exempts retirees
from these modifications to the level of benefits provided by the NBCWA Employer Benefit
Plan.   More particularly, Article XX(10)(c) of the 2002 NBCWA imposes a lesser annual
deductible of $750 on retirees who have are not yet Medicare-eligible and no further out-of-
pocket costs, and no deductible or out-of-pocket costs are imposed on retirees that are Medicare-
eligible, subject to certain Preferred Provider List limitations and prescription drug co-pays, as
described more fully in Article XX(10).  Thus upon retiring with the requisite number of years to
qualify for retiree health care under the NBCWA, claims submitted by a Bluestone Industries

8

Benefit Plan beneficiary must be reassigned to the appropriate level of benefits. A true and correct copy of the 2002 NBCWA, in relevant part, is attached hereto as Exhibit B.

21.     Effective April 30, 2004, Defendant Justice Energy became the contractual successor to Bluestone Coal at a particular mining operation known as the Redfox Mine, and, pursuant to the successorship requirements of the 2002 NBCWA, adopted Bluestone Coal's contractual obligations, including the provision of health care to actively employed and retired bargaining unit members, as described in paragraphs 19 and 20, above. A true and correct copy of the of the Successorship Notification Letter from Bluestone Coal to the UMWA dated April 30, 2004 is attached hereto as Exhibit C.

22.     On January 1, 2003, Defendant KSI and the UMWA entered into an Agreement, effective through December 31, 2006, in which KSI agreed to adopt each and every term of the 2002 NBCWA, including the provision of Health Care and the establishment of an Employer Benefit Plan pursuant to Article XX(10) of the NBCWA. On January 1, 2003, KSI and the UMWA also entered into a Memorandum of Understanding which specifically addressed the level of benefits to be provided under the Benefit Plan for active and retired employees, and was in all such respects identical to the Bluestone Coal MOU described in paragraphs 19 and 20, above. A true and correct copy of the aforementioned UMWA-KSI Agreement and MOU is attached hereto as Exhibit D.

23.     On June 3, 2004, Defendant Double Bonus and the UMWA entered into an Agreement, effective through December 31, 2006, in which Double Bonus agreed to adopt each and every term of the 2002 NBCWA, including the provision of Health Care and the establishment of an Employer Benefit Plan pursuant to Article XX(10) of the NBCWA. On June

9

3, 2004, Double Bonus and the UMWA also entered into a Memorandum of Understanding which specifically addressed the level of benefits to be provided under the Benefit Plan for active and retired employees, and was in all such respects identical to the Bluestone Coal MOU described in paragraphs 19 and 20, above.  A true and correct copy of the aforementioned UMWA-Double Bonus Agreement and MOU is attached hereto as Exhibit E.

24.     Effective October 4, 2004, Defendant Dynamic Energy and the UMWA entered into a Memorandum of Understanding, effective through September 30, 2009, in which Dynamic Energy agreed to adopt each and every term of the 2002 NBCWA and to provide bargaining unit employees with the same medical coverage as Bluestone Coal.  A true and correct copy of the aforementioned UMWA-Dynamic Energy MOU is attached hereto as Exhibit F.

25.     The collective bargaining agreements described in paragraphs 18-23, above, have been in full force and effect at all time relevant to the matters alleged herein.

26.     Pursuant to the collective bargaining agreements described in paragraphs 18-23 above (which may be referred to collectively as the "Bluestone Agreements"), Bluestone Industries Inc. and James C. Justice Industries, Inc., the parent corporations of the signatory Defendants herein, established the "Bluestone Industries Employee Benefit Plan", summarized in the attachment to the Bluestone Coal Memorandum of Understanding and attached hereto as Exhibit A, and published a Bluestone Industries Employee Benefit Plan Summary Plan Description ("SPD") setting forth in detail the medical, dental and vision plans.  The sections of the Bluestone Industries SPD that addressed the benefit coverage for UMWA-represented active employees and retired employees is  attached hereto as Exhibit G.   A general description of the Plan and its definitions is set forth at pages 122-162 of the SPD.   Bluestone Industries is

10

identified as the Employer and/or the Plan Sponsor and Plan Administrator at pages 4, 12, 156, 160 and 161 of the SPD.

27.     At all times described herein, Defendants have appointed a third party to administer Benefit Plan claims on their behalf.  For the period January 1, 2003 through March 31, 2004, Accordia National Administrators, located in Charleston, West Virginia, served as Claims Administrator.  For the period of April 1, 2004 through September 30, 2004, Corporate Benefit Administrators, located at Charlotte, North Carolina, served as Claims Administrator. For the period of October 1, 2004 through September 31, 2006, Allied Benefits Administrators, located in Huntington, West Virginia, served as the Claims Administrator.  On October 1, 2006, Defendants appointed Mountain States Blue Cross Blue Shield, located in Wheeling, West Virginia as the new Administrator presently responsible for processing claims.

**II.  Defendants' Chronically Delinquent Payment of Health Benefits Claims and the Arbitration Award Ordering Defendants' Compliance with the National Bituminous Coal Wage Agreement of 2002 and the Employer Benefit Plan Contained Therein.**

28.     From December 15, 2003 through the present, the Bluestone Industries Benefit Plan has chronically failed to pay undisputed claims, that is, claims that do not need additional information to be processed, in a timely manner as required by the 2002 NBCWA (that is, within 30 days from the date of the claim's submission to the Benefit Plan Administrator).

29.     Article XX, Section (e)(5) of the 2002 NBCWA governs disputes arising under the Employer Benefit Plan, and requires their submission for resolution to the Trustees of the UMWA Health and Retirement Funds ("Funds"), as follows:

> Disputes arising under this Agreement with regard to the Employer
> Benefit Plan... shall be referred to the Trustees.  The Trustees shall
> develop procedures for the resolution of such disputes.  In the
> event the Trustees decide such a dispute, such decision of the
> Trustees shall be final and binding on the parties.  (See Exhibit B,
> at p. 4 [158-159])

30.     The Trustees have established a process for reviewing and deciding such disputes, which is commonly referred to as the "ROD" (Resolution of Dispute) process.  Under the ROD process, an employee, a pensioner, or other participant who has a dispute with his or her employer relating to the Employer Benefit Plan may file, or the UMWA as his or her representative may file, a written "ROD" complaint with the Funds.

31.     Consistent with the process described in paragraphs 29 and 30, above, two ROD complaints were filed in connection with the Bluestone Industries Employee Benefit Plan.  On November 21, 2005, current and former UMWA-represented employees of Defendant Bluestone Coal filed, through their UMWA representative, a written complaint on behalf of themselves and other Bluestone Coal employees similarly situated alleging that the Company had filed to pay health claims in a timely manner, causing them to receive collection notices and statements from providers threatening collection actions if the outstanding bills were not paid.   The Funds assigned case number 02-022 to the Bluestone Coal ROD case.   On November 21, 2005, an identical written complaint was filed by current and former UMWA-represented employees of Justice Energy, through their UMWA representative, and was assigned case number 02-023.

32.     On April 29, 2006, the Trustees of the UMWA Health and Retirement Funds issued Opinions in ROD No. 02-022 and ROD No. 02-023, of which true and correct copies are attached hereto as Exhibits H and I.   In both cases, the Trustees unanimously found that

12

Bluestone Coal Corp. and Justice Energy Co. had failed to provide health coverage to the

bargaining unit employees as required by Article XX(c)(3)(i) of the collective bargaining

agreement, by reason of the Companies' failure to pay undisputed claims for benefits within 30

days. The Arbitration Awards ordered the Companies to make such timely payments, and to

insulate beneficiaries from collection actions or other actions that impaired a beneficiary's

credit-worthiness.

33.     On May 19, 2006, the UMWA Legal Department communicated by letter with

James C. Justice, President of Bluestone Coal and Justice Energy, demanding compliance with

ROD No. 02-022 and ROD No. 02-023.  A true and correct copy of that letter is attached hereto

as Exhibit J.

34.     On June 2, 2006, the UMWA Legal Department received, by facsimile

transmission, letters dated May 24, 2006 from Tom D. Lusk, as Chief Operating Officer of

Bluestone Coal, responding on behalf of Bluestone Coal, Justice Energy and Dynamic Energy to

the UMWA's May 19, 2006 letter referenced in paragraph 29, above.  The letters assured the

UMWA that the Companies were "diligently addressing these issues" and promised to fund

outstanding claims by Friday, May 26, 2006.  True and correct copies of those May 24, 2006

letters are attached hereto as Exhibit K(1-3).   The letters did not dispute or contest the Trustees'

ROD determinations, and at no time since the ROD decisions issued on May 19, 2006 have any

of the Defendants disputed their obligation to comply with the ROD Arbitration Awards.

35.     Based upon telephone calls and other communications from active and retired

bargaining unit employees of the signatory Defendants received by the UMWA representatives

in West Virginia and by the UMWA Legal Department in June (and continuing through the

13

present), the Union learned that health care providers had not received payments of outstanding claims, contrary to the representations made by Mr. Lusk in the May 24, 2006 letters referenced in paragraph 30, above.

36.     On June 5, 2006, the UMWA Legal Department again communicated with Mr. Lusk demanding compliance with the ROD decisions, and advising Defendants that members had informed the Union that a number of doctors and hospitals were no longer accepting their health cards because of chronic late payments, leaving them without necessary access to health care.   The Union further informed Defendants that the UMWA believed that the companies were engaging in a strategy of diverting funds, intended by contract to pay health claims, to capital improvements and other purposes unrelated to health benefits, and advised Defendants of its intent to bring suit if Defendants failed to comply fully and consistently with the ROD Awards.   The Union received no response from Defendants to its June 5, 2006 letter.  A true and correct copy of the June 5, 2006 letter is attached hereto as Exhibit L.

37.     In late August, 2006, the UMWA offered to meet with the Companies' Director of Human Resources (or any other Bluestone representative responsible for overseeing matters related to administration of the Benefit Plan) and with a representative of Allied Benefits Administrators (the Plan Administrator at that time), to give beneficiaries whose bills remained unpaid by the Benefit Plan an opportunity to present those demands for payment, individually and confidentially, for review by Defendants and for prompt payment.  In advance of those meetings, counsel for the UMWA, Deborah Stern, sent Defendants' counsel John Woodrum a letter dated September 6, 2006, itemizing the many problems UMWA members covered by the Bluestone Benefit Plan faced due to chronic benefit payment delinquencies and Defendants'

14

failure to properly administer the Plan. A true and correct copy of the UMWA's letter of September 6, 2006 is attached hereto as Exhibit M.

38.     Defendants agreed to the Union's request for meetings to address delinquent benefit claim payments, and UMWA counsel contacted active and retired Benefit Plan participants and informed them by letter dated September 8, 2006, that they could schedule individual meetings on September 26, 27, or 28 at the Holiday Inn Express in Princeton, West Virginia, with Tracy Graham, Director of Human Resources for Bluestone Industries, and a representative of Allied Benefits Administrators, in the presence of UMWA Counsel Deborah Stern, to present unpaid bills and receipts for reimbursement, and to ask particular questions about bills. A true and correct sample copy of the September 8, 2006 form letter sent to each participant is attached hereto as Exhibit N.

39.     Virtually every available slot for meetings on September 27, 28, and 29, 2006 was filled by active and retired employees of Defendants, including individual Plaintiffs herein and other Bluestone Industries Benefit Plan beneficiaries similarly situated. On September 27, 2006, Tracy Graham of Bluestone Resources, Andrea Mills of Allied Benefits Administrators, and Deborah Stern of the UMWA attended meetings from noon until 10 pm. At that time, Ms. Graham informed Ms. Stern that a batch of checks dated September 19, 2006, which had been signed and had been ready for delivery to health care providers, had been "lost" and would reissue without delay. To date, those "lost" checks appear not to have been found or to have reissued.

40.     On September 28 and 29, 2006, Deborah Stern and Andrea Mills again attended meetings with individual Benefit Plan beneficiaries from noon until about 10:30 pm, but Ms.

15

Graham did not attend, for the reason that her child had become ill.  Ms. Stern requested that Defendants send another individual representing Bluestone to attend the meetings, and Bluestone sent Terry Miller, who upon arriving informed Ms. Stern and Ms. Mills that he had insufficient knowledge of the Benefit Plan to assist in the meetings.  Ms. Stern and Ms. Mills continued to meet on September 28 and 29 with members and reviewed, to the best of their ability, claims for delinquent payments.

41.     By letter dated October 19, 2006, UMWA Counsel Deborah Stern communicated with Tom Lusk regarding the Princeton, West Virginia meetings that had occurred in late September, and advised him of numerous efforts she had made to follow up with Ms. Graham and of Ms. Graham's failure to respond to phone messages and e-mails.   Ms. Stern later learned from Bluestone members that Ms. Graham had quit employment with the Company.  At no time did Defendants refer her to any other Bluestone representative responsible for the administration of matters arising under the Benefit Plan.  A true and correct copy of the UMWA's October 19, 2006 letter is attached hereto as Exhibit O.

42.     Upon returning to the office after the Princeton meetings, the UMWA continued to make efforts to bring Bluestone's attention to beneficiaries' delinquent bills of members who had attended those meetings, as indicated by the letter of October 25, 2006 from Ms. Stern to Bluestone Chief Operating Officer Tom Lusk, Bluestone counsel John Woodrum, and Allied Benefits Administrator executive Andrea Mills.   Defendants have not responded to the UMWA with respect to the bills the Union submitted for claims reprocessing and payment, and upon information and belief, most of the bills submitted remain unpaid.  A true and correct copy of the October 25, 2006 letter is attached as Exhibit P.

43.     In spite of the fact that Defendants have admitted their obligation to comply with ROD No. 02-022 and ROD No. 02-023, they have failed to comply with those Arbitration Awards.

44.     Defendants' Pattern of Misrepresentations to the UMWA, to Individual Plaintiffs, and to Other Beneficiaries of the Bluestone Benefit Plan Regarding the Status of Payment of Claims; Defendants' Failure to Properly Administer and Fund the Benefit Plan for the Benefit of the Plan's Participants and Dependents; and Defendants' Failure to Remit in a Timely Manner Plan Assets, in the Form of Employee Payroll Deductions, to the Benefit Plan.

45.     At all times relevant hereto, Defendants have repeatedly informed inquiring individual Plaintiffs herein and other Benefit Plan beneficiaries similarly situated, and the UMWA as their representative, that checks had issued to providers in question, when in fact checks either had not been delivered to providers or had not issued at all.  Defendants issued Explanation of Benefits to individual Plaintiffs and other Benefit Plan beneficiaries similarly situated indicating that payment of approved claims had been assigned check numbers, when in fact checks did not issue, or checks issued and were not delivered to the billing health care providers.  By these acts, Defendants misrepresented material facts concerning the administration of the Benefit Plan and the provision of benefits, and failed to provide material facts affecting the interest of the beneficiaries which Defendant knew or should have known that those individuals required for their protection against payment demands by providers and collection agencies, to the detriment of individual Plaintiffs and other Benefit Plan beneficiaries similarly situated .

46.     At all times material hereto, Defendants have deducted from actively employed Plan beneficiaries monthly premium contributions described in paragraph 14, above, purportedly to provide administer the Benefit Plan and pay claims.   On information and belief, Defendants have failed to apply, within a period of 90 days (if at all), participant contributions only to the payment of benefits and reasonable administrative expenses of the plan.  On information and belief, Defendants have diverted these Plan Assets for the payment of business operating expenses and other purposes unrelated the administration of the Benefit Plan or the payment of benefits.

47.     Defendants have repeatedly failed to correctly apply benefit coverage levels to claims, assigning claims for health care services to Benefit Plan deductibles where beneficiaries have satisfied their annual deductible maximums, imposing an 80/20 deductible and co-pay scheme on claims that are contractually covered at a level of 100% Plan payment, and failing to reassign retired participants to the level of coverage set forth in the NBCWA rather than the modified level of coverage set forth in the Defendants' MOUs (referenced in paragraph 18 through 24, above).  This rampant confusion in the administration of the Benefit Plan has effectively denied individual Plaintiffs and other Benefit Plan beneficiaries similarly situated, the Benefit Plan coverage to which they are contractually entitled, to their detriment.

48.     Most recently, effective October 1, 2006, Defendants again changed the identity of a third-party administrator for the Benefit Plan, selecting Mountain States Blue Cross Blue Shield ("Mountain States BCBS").   Defendants represented to the UMWA that the Benefit Plan would be fully funded, based upon monthly premium payments.  In fact, the Union learned upon

making an inquiry that the Benefit Plan remains a self-funded plan under Defendants agreement with Mountain States BCBS.

49.    Defendants have proven themselves incapable of exercising the required care, skill, prudence and diligence to marshal the Companies' financial resources so as to maintain sufficient funds with which to properly administer the Benefit Plan and provide benefits thereunder, and to fulfill their roles as fiduciaries.  Accordingly, the appointment of a Neutral Administrator to oversee the funding of the Plan, its administration and its provision of benefits is necessary and appropriate relief under the circumstances described herein.

## CAUSES OF ACTION

## COUNT I

## Enforcement of Arbitration Awards

50.    Plaintiffs reallege the allegations set forth in paragraph 1 through 49 of the Complaint as if fully set forth herein.

51.    Pursuant to Article XX, Section(e)(5) of the 2002 NBCWA, the Decisions rendered by the UMWA Health and Retirement Funds Trustees in ROD 02-022 and ROD 02-023 on April 29, 2006 are final and binding arbitration awards on Defendants.

52.    There exists a need for a prompt declaratory judgment confirming the validity of ROD 02-022 and ORD 02-023, and injunctive relief enforcing the arbitration award and ordering Defendants to comply without delay.

**COUNT II**

**Breach of Collective Bargaining Agreement**

53.     Plaintiffs reallege the allegations set forth in paragraph 1 through 52 of the Complaint as if fully set forth herein.

54.     Defendants have failed and refused to administer, maintain and fund the Benefit Plan and provide benefits thereunder, thereby breaching and violating their obligations under the National Bituminous Coal Wage Agreement of 2002, as adopted and as modified by the Memoranda of Understanding to which they are signatory, as described more fully in paragraphs 18 through 23, above, to the detriment of Plaintiffs and other bargaining unit members similarly situated.

55.     As a result of Defendants' contractual breach, the individual Plaintiffs and other Plan beneficiaries similarly situated have incurred damages in the form out-of-pocket payments that they have made for covered Benefit Plan health services that are the financial responsibility of Defendants, and for which Defendants are liable to individual Plaintiffs and other beneficiaries similarly situated for reimbursement.

56.     As a result of Defendants' contractual breach, the individual Plaintiffs and other Plan beneficiaries similarly situated have received numerous demands for full payment of medical bills from providers and from their collection agencies, against which Defendants are liable to hold them harmless.

57.     As a result of Defendants' contractual breach,  the individual Plaintiffs and other Plan beneficiaries similarly situated been threatened with legal action by providers and their

collection agencies for nonpayment of medical bills and threatened with adverse consequences to their ratings for credit worthiness, against which Defendants are liable to hold them harmless.

58.     Notwithstanding that ROD No. 02-022 and ROD No. 02-023 are final and binding arbitration awards which Defendants have admitted they must comply with, Defendants have failed and refused to make timely payment on approved claims for benefits, to hold individual Plaintiffs and others Benefit Plan beneficiaries similarly situated harmless from payment demands made by providers and collection agencies, and to protect individual Plaintiffs and others Benefit Plan beneficiaries similarly situated from the consequent impact on their credit-worthiness, all in violation of the aforementioned RODS.  Accordingly, Defendants are liable for full compliance with these RODs.


## COUNT III

## Violations of ERISA:  Against Defendants, Individually and Collectively, for Breach of Fiduciary Duties

59.     Plaintiffs reallege the allegations set forth in paragraph 1 through 58 of the Complaint as if fully set forth herein.

60.     Each of the Defendants herein have been, at all times relevant hereto, an "Employer, "Administrator", and "Plan Sponsor" within the meaning of the Employee Retirement income Security Act of 1974 (ERISA), 29 U.S.C. §§1002(5) and 1002(16).

61.     Defendants, individually and collectively, have breached their duty to exercise their fiduciary obligations to remit to the Benefit Plan, in a timely manner, those Plan Assets

deducted from active employees paychecks as contributions to monthly Benefit Plan premium payments, and are thus liable to remit to the Plan those Assets wrongfully withheld.

62.     Defendants, individually and collectively, are liable for the diversion of Plan assets to purposes unrelated to the administration and funding of the Benefit Plan.

63.     Defendants, individually and collectively, are liable to individual Plaintiffs and other Plan beneficiaries similarly situated for damages and all other adverse consequences to them caused by their reliance upon Defendants' false representations regarding delinquent payments purportedly made to satisfy outstanding claims.

64.     Defendants, individually and collectively, are liable for their failure to adequately fund the Benefit Plan and to operate it prudently and for the exclusive benefit of its beneficiaries.

## COUNT IV

### Violations of ERISA: Recovery Plan Benefits

65.     Plaintiffs reallege the allegations set forth in paragraph 1 through 64 of the Complaint as if fully set forth herein.

66.     Defendants are liable, individually and collectively, to make payments to the Benefit Plan of Plan Assets intended as employee contributions toward premium payments, for the administration of the Benefit Plan and the payment of benefits.

67.     Defendants are liable, individually and collectively, to individual Plaintiffs and other Benefit Plan beneficiaries similarly situated for their acts and omissions in their capacity as

administrators and sponsors of the Bluestone Industries Employee Benefit Plan, in failing to provide the Benefit Plan beneficiaries with contractually mandated benefits.

68.     Defendants are liable, individually and collectively, under ERISA Section 502, 29 U.S.C. §1132, for the benefits owed to individual Plaintiffs and other Benefit Plan beneficiaries similarly situated.

69.     Individual Plaintiffs and other Benefit Plan beneficiaries similarly situated are entitled, under ERISA Section 502, 29 U.S.C. §1132, to equitable and other relief enforcing their right to benefits, including, but not limited to, the appointment of a Neutral Administrator to supervise and manage the necessary fiduciary functions that Defendants have failed to carry out, to properly fund, manage, and administer the Bluestone Industries Employee Benefit Plan.

## COUNT V

### Damages

70.     Plaintiffs reallege the allegations set forth in paragraph 1 through 69 of the Complaint as if fully set forth herein.

71.     As a direct and proximate result of the actions of the Defendants as set forth above, the individual Plaintiffs and other Benefit Plan beneficiaries similarly situated  have incurred and continue to incur unpaid medical bills for the treatment of themselves and their dependents.

72.     As a direct and proximate result of the actions of the Defendants as set forth above, individual Plaintiffs and other Benefit Plan beneficiaries similarly situated are presently

suffering and will continue to suffer the deprivation of health and other insurance to which they are entitled.

73.    The individual Plaintiffs and other Benefit Plan beneficiaries similarly situated have no adequate or feasible administrative or legal remedies for the imminent and irreparable harm they will suffer by the continued deprivation of their health insurance coverage.  Any harm which could result to the Defendants by the granting of injunctive relief in this matter would be minor compared to the great, immediate and irreparable harm which will result to the individual Plaintiffs and other Benefit Plan beneficiaries similarly situated, if injunctive relief is not granted.

**PRAYER FOR RELIEF**

**WHEREFORE,** in order to avoid the irreparable injury that will occur as described in Counts I through V, above, the United Mine Workers of America and individual Plaintiffs herein request that this Honorable Court:

74.    Declare that the Defendants have each breached their duties under the collective bargaining agreements and ERISA as alleged herein;

75.    Enforce labor arbitration awards designated ROD 02-022 and ROD 02-023, rendered on April 29, 2006 by the Trustees of the UMWA Health and Retirement Funds.

76.    Grant compensatory damages in accordance with the allegations of this complaint, including prejudgment interest on the amount of unpaid medical bills incurred by the individual Plaintiffs and other Benefit Plan beneficiaries similarly situated;Grant preliminary and permanent injunctive relief mandating that the Defendants, individually and collectively, provide

the individual Plaintiffs and other Benefit Plan beneficiaries similarly situated with the

healthcare coverage and other insurance benefits to which they are entitled under the collective

bargaining agreements and the Bluestone Industries Employee Benefit Plan, and to make prompt

payment on delinquent bills for undisputed claims;

      77.    Order the Defendants, individually and collectively, to immediately reimburse the

Plaintiffs for all medical bills incurred by the Individual Plaintiffs;

      78.    Appoint a Neutral Third Party Administrator to oversee, supervise and manage

the funding and administration of the Bluestone Industries Benefit Plan, until such time that

Defendants can demonstrate that they are capable of carrying out these necessary fiduciary

functions;

      79.    Award costs, including reasonable attorneys fees; and

      80.    Grant the individual Plaintiffs and other Benefit Plan beneficiaries similarly

situated such other relief as the Court deems just and proper.

      Plaintiffs request a trial by jury on all issues properly triable by jury.

                    MICHAEL A. PAULEY, et al.
                    Plaintiffs, by Counsel

/s/ Bradley J. Pyles_____
Bradley J. Pyles, State Bar No. 2998
Pyles, Haviland, Turner & Smith, LLP
P. O. Box 596
Logan, WV 25601
Telephone (304) 752-6000
Fax (304) 756-3123
email brad.pyles@cphtlogan.com

Deborah Stern
Associate General Counsel
United Mine Workers of America
8315 Lee Highway
Fairfax, VA 22031-2215
Telephone (703) 208-7138
Fax (703) 208-7134
email dstern@umwa.org

Charles F. Donnelly
Senior Staff Attorney
United Mine Workers of America
1300 Kanawha Blvd. E.
Charleston, WV 25301
Telephone (304) 346-0341
Fax (304) 346-0353
email cdonnelly@umwa.org